Citation Nr: 1722377 
Decision Date: 06/15/17 Archive Date: 06/29/17

DOCKET NO. 13-09 174 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in New York, New York


THE ISSUES

1. Entitlement to an initial disability rating in excess of 10 percent for residuals of retinal detachment, right eye, status post surgical repair of scleral buckle.

2. Entitlement to a total disability rating based upon individual unemployability due to service-connected disability.


REPRESENTATION

Appellant represented by: Robert J. Osborn, Attorney


ATTORNEY FOR THE BOARD

A. Fagan, Counsel


INTRODUCTION

The Veteran performed active duty for training from November 1976 to March 1977 and served on active duty from May 1977 to May 1980.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a March 2015 decision by a Department of Veterans Affairs (VA) Regional Office (RO).

Although the Veteran requested for a Board videoconference hearing to present testimony regarding his claim for an increased rating for his right eye disability, that hearing request was withdrawn in February 2016. 38 C.F.R. § 20.704 (2016).

In June 2016, the Board remanded this matter for additional development. Also at that time, the Board remanded the issues of entitlement to service connection for a right hamstring disability and an unspecified nerve disorder. However, in November 2016, the RO issued a rating decision granting service connection for a right hamstring strain and radiculopathy of the right and left lower extremities, claimed as an unspecified nerve disorder. The Veteran was informed at that time that those service connection awards represented complete grants of benefits concerning his right hamstring and unspecified nerve disorder service connection claims. The Veteran did not disagree or dispute that finding. As such, those issues are considered resolved and are no longer before the Board. See Grantham v. Brown, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (holding that where an appealed claim for service connection is granted during the pendency of the appeal, a second NOD must thereafter be timely filed to initiate appellate review of the claim concerning "downstream" issues, such as the compensation level assigned for the disability and the effective date); see also 38 C.F.R. § 20.200 (2016).

Finally, in an April 2016 statement, the Veteran waived the right to initial RO review of all additional evidence and/or records submitted following receipt of his substantive appeal. No additional action is warranted in this regard. See 38 C.F.R. §§ 19.31, 20.1304(c) (2016). Additionally, Under the Honoring America's Veterans and Caring for Camp Lejeune Families Act of 2012, any additional evidence that the Veteran submitted after the most recent November 2016 supplemental statement of the case was issued is subject to initial review by the Board because the Veteran did not request in writing that the Agency of Original Jurisdiction (AOJ) initially review such evidence. See 38 U.S.C.S. § 7105(e)(1) (LexisNexis 2017).

This appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c) (2016). 38 U.S.C.A. § 7107(a)(2) (West 2014).


FINDING OF FACT

The evidence demonstrates that the Veteran's open-angle glaucoma is related to his service-connected right eye disability and requires continuous medication.


CONCLUSION OF LAW

The criteria for a separate 10 percent evaluation for right eye open-angle glaucoma have been met. 38 U.S.C.S. §§ 1155, 5107 (LexisNexis 2017); 38 C.F.R. §§ 4.1, 4.3, 4.7, 4.10, 4.79, Diagnostic Codes 6012, 6013 (2016).


REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran is seeking a higher evaluation for his service-connected residuals of retinal detachment, right eye, status post surgical repair of scleral buckle. 

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities, found in 38 C.F.R., Part 4. The rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered as a result of, or incident to, military service. The ratings are intended to compensate, as far as can practicably be determined, the average impairment of earning capacity resulting from such diseases and injuries and their residual conditions in civilian occupations. 38 U.S.C.S. § 1155; 38 C.F.R. § 4.1. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria for that rating. Otherwise the lower rating will be assigned. 38 C.F.R. § 4.7. 

Here, the Veteran's right eye disability is rated as 10 percent disabling based on impaired visual acuity, and entitlement to a rating higher than 10 percent for impairment of visual acuity is discussed further in the Remand portion below. However, the Board first finds that the evidence demonstrates that the Veteran's right eye disability warrants a separate 10 percent evaluation for open angle glaucoma as it has been shown to be a component of his service-connected right eye disability, or to be otherwise directly related to the same in-service service event that caused his retinal detachment.

In this regard, the September 2014 VA examiner opined that the Veteran's right eye retinal detachment was related to his history of blunt trauma from boxing, and further noted that the history of blunt force trauma also puts a person at risk for developing angle recession glaucoma in the future. That examiner also noted on the examination report that the Veteran has glaucoma in and is receiving treatment for the right eye only. More recently, in February 2015 and October 2016, the Veteran was assessed with secondary open angle glaucoma in the right eye. Significantly, there is a negative family history of glaucoma as reported by the Veteran throughout the record, and the Board observes that in October 2011, risks associated with the scleral buckle surgery for the right retinal detachment included glaucoma.
 
Thus, the Board finds that the evidence shows that the Veteran's glaucoma is associated with the blunt trauma causing retinal detachment and subsequent scleral buckle surgery. Moreover, the record shows that the Veteran been receiving ongoing treatment for his glaucoma in the right eye, and the September 2014 VA examiner also noted continuous medication. Thus, a separate 10 percent evaluation is warranted. 38 C.F.R. §§ 4.75, 4.79, Diagnostic Code 6013. 

Whether the Veteran may be entitled to higher evaluations for his glaucoma and other residuals of retinal detachment, right eye, status post surgical repair of scleral buckle, is discussed further below.


ORDER

Entitlement to a separate 10 percent evaluation for glaucoma of the right eye is granted.


REMAND

Unfortunately, the Board finds that further remand of the Veteran's right eye increased rating claim is necessary prior to adjudication. 

Foremost, the Veteran was last afforded a VA examination to evaluate his right eye disability in September 2014. Since that time, there is evidence that his right eye disability has worsened. In this regard, while visual field testing prior to and in September 2014 showed either essentially full field of vision, mild superior depression, and in September 2014, "mild contraction on field nasally" with no loss of visual field or defect noted, more recent visual field testing in February 2015 revealed a superior defect in a partial arcuate pattern. Such evidence suggests a worsening of the Veteran's visual field impairment since the September 2014 VA examination and, therefore, the Board finds that a new examination is necessary. 

On remand, the new examiner should also comment on all disability or manifestations associated with the Veteran's right eye disability. In this regard, in addition to the Veteran's secondary open angle glaucoma, ongoing VA treatment records variously note or reference right eye findings to include uveitis, posterior vitreous detachment, floaters, flashes, nevi, macular scarring, and dry eyes. Also in July 2013, there is discussion of an "a/c reaction," which could be allergic conjunctivitis, and for which there was a prescription of "pf QID," which research reveals for be Pred Forte, or ophthalmologic prednisolone. Indeed, active prescriptions at that time included prednisolone acetate for the right eye. Given the foregoing, the examiner should clarify all of the manifestations, signs and/or symptoms of the Veteran's residuals of retinal detachment, right eye, status post surgical repair of scleral buckle.

Additionally, on remand, the VA examiner should clarify or interpret some of the past findings and notations of record. Foremost, the Board notes that at various times in the record, including in April 2012, it has been noted that interpretation of the Humphrey Visual Field testing of the right eye should be done "with caution given prior RD [retinal detachment]." Additionally, given evidence of unreliability on visual field testing of record due to fixation losses, in January 2014, it was suggested to "consider following objectively if perimetry unreliable in the future." The examiner should address those statements and comment on the reliability of the tests of record and indicate whether other testing would be more appropriate for this Veteran. 

Additionally, while the September 2014 VA examiner noted mild contraction of the Veteran's field of vision, nasally, s/he did not specify the degree(s) of contraction. On remand, the examiner should specify any degrees of contraction and identify the fields in which contraction occurs. 

The Board also notes that throughout the record, the Veteran's visual acuity for the right eye has varied and been seemingly inconsistent between corrected and uncorrected visual acuity, as well as use of pinhole correction for refractive error. 
For example, in January 2012, there are no findings recorded for uncorrected vision, but under "Current Glasses" for the right eye, visual acuity is recorded as 20/100- and 20/50-2 using pinhole. However, both prior to and after that appointment, in December 2011 and March 2012, the Veteran's uncorrected vision is recorded as 20/100- and 20/50-2 using pinhole. Then, in April 2012, the Veteran's right visual acuity using glasses is recorded as 20/100 and, using pinhole, 20/50. There is also some discrepancy as to whether use of pinhole is appropriate as at times it is used, others not, and in February 2015, it was noted that pinhole testing was not indicated. Also noteworthy is that in February 2017, after a finding of slightly decreased corrected visual acuity, it was noted that the Veteran may not be wearing the correct prescription. Given the foregoing, the examiner should review the Veteran's right eye visual acuity throughout the record and clarify which findings reflect the Veteran's best corrected right eye visual acuity. 

Next, as discussed, the Veteran has undergone multiple visual field tests during the period on appeal, including in July 2012, July 2013, January 2014, February 2015, and October 2016. While the results of those tests are reported generally in associated VA treatment notes, the actual visual field test charts generated in conjunction with those tests have not been associated with the record. As such, remand is necessary in order to obtain the associated visual field charts from all visual field testing during the period on appeal.

Finally, the Board also observes that in April 2017 the Veteran filed a claim of entitlement to a TDIU, claiming unemployability since January 2017 due, in part, to his service-connected right eye disability. Thus, entitlement to a TDIU is raised by the record. See Rice v. Shinseki, 22 Vet. App. 447 (2009). Therefore, on remand, a VA examiner should address the impact of the Veteran's right eye disability, including the combined impact of his right eye disability with his other service-connected disabilities, on the Veteran's occupational functioning.

Accordingly, the case is REMANDED for the following action:

(Please note, this appeal has been advanced on the Board's docket pursuant to 38 C.F.R. § 20.900(c). Expedited handling is requested.)

1. Obtain and associate with the electronic claims file any updated and outstanding VA treatment records, to specifically include the charts associated with all visual field testing during the period on appeal, including testing in July 2012, July 2013, January 2014, February 2015, and October 2016.

2. After completing the action requested in paragraph #1, schedule the Veteran for an appropriate VA eye examination to identify and assess the current severity of all manifestations of his service-connected residuals of retinal detachment, right eye, status post surgical repair of scleral buckle. The examiner must review the claims file and all relevant electronic medical records. 

The examiner should report all signs and symptoms, and associated functional impairment, for each disability identified. The examiner should specifically comment on whether, in addition to glaucoma, any uveitis, posterior vitreous detachment, floaters, flashes, nevi, macular scarring, dry eyes, and/or allergic conjunctivitis are considered part of or are attributable to the Veteran's service-connected residuals of retinal detachment, right eye, status post surgical repair of scleral buckle, and if so, comment on the functional impairment caused by each manifestation. The examiner should also comment on the overall impact of the right eye disability on occupational functioning, including the combined impact of the right eye disability with consideration of the Veteran's other service-connected disabilities.

All tests and studies deemed necessary should be accomplished, and all special tests and clinical findings should be reported. 

When examining visual acuity, the examiner must identify and discuss the disease, injury, or other pathologic process responsible for any visual impairment found. Examination of visual acuity must include the central uncorrected and corrected visual acuity for distance and near vision using Snellen's test type or its equivalent.

When examining visual fields, the examiner must use either Goldmann kinetic perimeter or automated perimetry with simulated kinetic Goldman testing capability. The results must be recorded on a standard Goldman chart which must be included with the examination report. The examiner must chart at least 16 meridians 22 1/2 degrees apart for each eye and indicate the Goldmann equivalent used. If additional testing is necessary to evaluate visual fields, the additional testing must be conducted using either a tangent screen or a 30-degree threshold visual field with the Goldmann stimulus size and the examination report must then include tracing of either the tangent screen or of the 30-degree threshold visual field with the Goldmann III stimulus size. 

When examining muscle function, the examiner must use a Goldmann perimeter chart that identifies the four major quadrants (upward, downward, left and right lateral) and the central field (20 degrees or less). The examiner must chart the areas of diplopia and include the plotted chart with the examination report. The examiner should indicate whether the Veteran's diplopia is occasional, or correctable with spectacles.

The examiner must discuss whether there is any evidence of rest requirements or incapacitating episodes severe enough to require prescribed bed rest and treatment by a physician or other health care provider.

In providing the foregoing, the examiner is specifically requested to consider the ongoing VA treatment notes showing varying corrected visual acuity for the right eye, including inconsistent use of pinhole correction, and provide an opinion as to what finding(s) best represent the level(s) of central visual acuity impairment on the basis of corrected distance vision in the right eye during the period from January 1, 2012.

The examiner is also requested to address the significance of the statements in April 2012 that interpretation of Humphrey Visual Field results for the right eye should be interpreted "with caution given prior RD [retinal detachment]," and in January 2014 that consideration should be given to "following [the Veteran] objectively if perimetry unreliable in the future." The examiner should comment on the reliability of prior testing and the appropriateness of certain testing or evaluation of the Veteran's right eye disability with consideration of those statements. 

The examiner is requested to provide a fully reasoned explanation for his or her opinions, based on his or her clinical experience, medical expertise, and established medical principles.

3. Following completion of the eye examination, and after completing any other necessary development, forward the claim to the Undersecretary of Benefits or the Director of the Compensation Service for consideration of the assignment of an extra-schedular disability rating for service-connected right eye disabilities pursuant to the provisions of 38 C.F.R. § 3.321(b).

4. Finally, readjudicate the claim for an increased rating for residuals of retinal detachment, right eye, status post surgical repair of scleral buckle, to include glaucoma. If any benefit sought on appeal remains denied, the Veteran and his representative should be issued a supplemental statement of the case, and given an opportunity to respond before the case is returned to the Board.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




____________________________________________
S. C. KREMBS
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2016).


Department of Veterans Affairs